[File No. 7064]

IN THE MATTER OF THE APPLICATION OF CARL M. HVIDSTEN, GRAFTON, NORTH DAKOTA, for a Special Certificate for Authority to engage in the transportation of petroleum products in bulk in tank trucks between points and places in the State of North Dakota.

CARL M. HVIDSTEN, Appellant, v. NORTHERN PACIFIC RAILWAY COMPANY, a Corporation, et al, Defendants and Respondents, and S. S. McDONALD et al, as Members of the Public Service Commission of the State of North Dakota, Respondents and Appellants, SUPER TRANS-PORT CO., a Corporation, Respondent.

(33 NW2d 615)

Opinion filed August 21, 1948

*Franklin J. Van Osdel, Nels G. Johnson,* Attorney General and
*I. A. Acker,* for appellants.

*Conmy & Conmy* and *Perry R. Moore,* for respondents.

BURKE, J. The petitioner, C. M. Hvidston, made application to the Public Service Commission for a special certificate of public convenience and necessity authorizing him to transport by motor tank trucks petroleum products in bulk between all points in North Dakota.

At the hearing upon the petition the Northern Pacific Railway Company, Great Northern Railway Company, Minneapolis, St. Paul and Saulte Ste. Marie Railroad Company, and Chicago, Milwaukee, St. Paul and Pacific Railroad Company, common carrier railroads operating within the state, appeared and entered formal protests to its allowance. Subsequent to the hearing the Public Service Commission made its order directing the issuance of a special certificate of public convenience and necessity to the petitioner, authorizing the transportation of petroleum products in bulk in tank trucks from Great Lakes Pipeline terminals at Fargo and Grand Forks "to points and places in the State of North Dakota." Later the authorization was amended to include as points of shipment origin, the immediate vicinities of the pipeline terminals as well.

The railroad carriers appealed from this order to the District Court of Cass County. Upon that appeal the District Court modified the order of the Commission and directed that the granted authorization be limited, as to points of destination of shipments, to points not situated in cities, towns or villages located upon railroads. Judgment was entered accordingly. The petitioner and the Public Service Commission have appealed from the judgment of the District Court and a review of the entire case is demanded.

The Findings, Conclusions and Order of the Commission were as follows:

*"Findings of Fact*

I.

That the applicant is a resident of the city of Grafton, North Dakota, and is engaged in the transportation of petroleum prod-

ucts in bulk in interstate commerce. The applicant has six compartmented transports which he is using in the service. The compartments range from 500 up to about 1900 gallons.

## II.

That the applicant has a net worth of about $162,000 and has established in addition to his main office at Grafton, North Dakota, an office at Grand Forks, North Dakota, and Fargo, North Dakota.

## III.

That besides the applicant about twenty-six commercial witnesses appeared in support of the application, which witnesses consisted of North Dakota resident dealers in petroleum products, as well as representatives of the H. K. Stahl Company, Skelly Oil Company, Phillips Petroleum Company, Kanotex Refining Company, Deep Rock Oil Company, etc. These witnesses unanimously testified to the effect that a public convenience and necessity exists for the proposed motor transportation service of petroleum products from the Great Lakes Pipeline Terminals located between Fargo and West Fargo, North Dakota, and just beyond the city limits of Grand Forks, North Dakota, to other points and places in North Dakota, and return. The testimony of these witnesses is further to the effect that the transportation of petroleum products by motor transport is speedier and more flexible than rail service and therefore a public necessity. The witnesses also testified that rail service is essential and they will continue to use it in addition to motor truck service.

## IV.

That about nine witnesses appeared in protest to the application testifying to the effect that present rail service rendered by the various railroad companies is reasonably adequate and that the application, if granted, and the services inauguarated, well be detrimental to present transportation facilities to the extent that it will impair the services. In addition to the nine

witnesses actually testifying for the protestants it was stipulated between the applicant and protestants that several protestant witnesses who did not testify would give substantially the same testimony as those witnesses that did testify if the same questions were put to them.

## V.

That witnesses appearing in support of the application covered practically all parts of the State of North Dakota and request service from the Great Lakes Pipeline Terminal near Fargo and Grand Forks, North Dakota, to points and places scattered all over the State. The inherent advantage of motor truck service was also stressed by the same witnesses.

## VI.

That many reasons were shown why applicant's proposed service is desired not only as a convenience but also as a practical necessity. Some of the towns in which bulk plants are located have no railroads and in some instances though the town has railroad service the dealers' tanks are not on a rail siding and loading and unloading by motor vehicles would still be required.

## VII.

That the record shows many instances of dealers having 1,000 gallon tanks and some only 450 to 500 gallon capacity. These dealers cannot order or buy tank car lots which average about six to eight thousand gallons per tank car. There is a relatively small number of compartmented tank cars and same are more diffcult to obtain and slower in arrival than the ordinary tank cars. Furthermore, practically all of such compartmented tank cars are of three compartments with 2,000 gallons capacity each, a volume considerably in excess of what many of the bulk dealers desire in single shipments.

## VIII.

That about 80 to 90% of all petroleum products used in the State of North Dakota is sold to farmers and farms are operated

almost entirely with motorized machinery. Their needs have to be met promptly. Consumption of gasoline and other fuels is not only seasonal but is highly responsive to weather. Thus when rains make the fields too wet, consumption drops, and dealers find it difficult if not impossible to predict the weather and consequent consumption, and oftentimes are caught with empty tanks. In such cases expedited service by motor carriers is essential.

## IX.

That there is practically no evidence of record to the effect that motor transportation service of petroleum products is required between points and places in the State of North Dakota other than from the Great Lakes Pipeline Terminals at Fargo and Grand Forks, North Dakota, to petroleum distributors located at points and places within the State, and return.

From the foregoing Findings of Fact, the Commission make the following:

### Conclusions of Law.

## I.

That the evidence of record appears sufficient as a matter of law to warrant the issuance of a certificate of public convenience and necessity to the applicant authorizing motor freight service in bulk from the Great Lakes Pipeline Terminals at Fargo and Grand Forks, North Dakota, to petroleum dealers throughout the State and return.

## II.

That there is an actual need for the proposed motor freight service of petroleum products in bulk to and from points and places set forth in Paragraph I of the Conclusions.

## III.

That the public convenience will be served by the rendition of the proposed service.

## IV.

That the evidence discloses that the service presently rendered by existing transportation facilities is not reasonably adequate.

## V.

That the public need and best interests and convenience of the public will be served by the issuance of a Special Certificate authorizing motor freight service of petroleum products in bulk from the Great Lakes Pipeline Terminals at Fargo and Grand Forks, North Dakota, to other points and places in the State of North Dakota, and return.

## VI.

That the applicant is fit, willing and able, financially and otherwise, to perform the proposed motor freight service of petroleum products in bulk.

## *Order*

Now therefore, it is ordered:

## I.

That a Special Certificate of Public Convenience and Necessity be issued to the applicant, Carl M. Hvidsten, Grafton, North Dakota, authorizing the transportation of petroleum products in bulk from the Great Lakes Pipeline Terminals at Fargo and Grand Forks, North Dakota, to points and places in the State of North Dakota, and return.

## II.

That said Special Certificate be issued subject to all rights, duties and liabilities prescribed by law and upon the condition that the applicant shall file with the Commission:

(a) Schedules of tariffs covering truckload and less-than-truckload lots;

(b) Policies covering public liability, property damage and cargo insurance; and

(c) Bond covering c. o. d. shipments."

The statute governing appeals from determinations of administrative agencies is § 28–3219 ND Rev Code 1943. It reads as follows:

"The court shall try and hear an appeal from the determination of an administrative agency without a jury and the evidence considered by the court shall be confined to the record filed with the court. If additional testimony is taken by the administrative agency or if additional findings of fact, conclusions of law, or a new decision shall be filed pursuant to section 28–3218, such evidence, findings, conclusions, and decision shall constitute a part of the record filed with the court. After such hearing, the court shall affirm the decision of the agency unless it shall find that such decision or determination is not in accordance with law, or that it is in violation of the constitutional rights of the appellant, or that any of the provision of this chapter have not been complied with in the proceedings before the agency, or that the rules or procedure of the agency have not afforded the appellant a fair hearing, or that the findings of fact made by the agency are not supported by the evidence, or that the conclusions and decision of the agency are not supported by its findings of fact. If the decision of the agency is not affirmed by the court, it shall be modified or reversed, and the case shall be remanded to the agency for disposition in accordance with the decision of the court."

Upon their appeal to the district court protestants assigned error upon seven counts. One of these assignments, to wit: *"The findings of fact are not sufficient to support the conclusions of law and the order made"*, is decisive upon this appeal. We shall therefore limit our consideration to that assignment.

Section 49–1814, ND Rev Code 1943 provides:

"Before granting a certificate to a common motor carrier, the commission shall take into consideration:

1. Existing travel upon the route of the carrier;

2. The increased cost of maintaining the highway concerned;

3. The effect on other essential forms of transportation; and

4. Existing transportation facilities in the territory for which a certificate is sought.

In case it appears from the evidence that the service furnished or that could be furnished by existing transportation facilities is reasonably adequate, the commission shall not grant such certificate."

The provisions of this section constitute "A restriction upon the powers of the commission in granting certificates of public convenience and necessity to motor trucks as common carriers." Tri-City Motor Transp. Co. v. Great Northern R. Co. 67 ND 119, 270 NW 100, 17 PUR NS 504. See also Theel v. Great Northern R. Co. 72 ND 280, 6 NW2d 560, 47 PUR NS 328; Re Midwest Motor Express, 74 ND 416, 23 NW2d 49, 64 PUR NS 467. Thus before a certificate of public convenience and necessity may be granted to a motor truck carrier it must appear that the granting of the certificate will not materially impair other essential forms of transportation or place an unjustifiable burden upon the public for the increased cost of maintaining the highways. Even where a need for a proposed service exists, the advantage to be gained by those who will use the service must be weighed and balanced against the detriment which the general public may suffer because of such service.

In the instant case the Public Service Commission made no findings (1) with respect to existing travel upon the route of the carrier, (2) with respect to the increased cost of maintaining the highways, (3) with respect to the effect the granting of the application would have on other essential forms of transportation, and (4) with respect to the possibility that the existing transportation facilities could make their service adequate. Protestants assert that the failure of the Commission to make findings of fact concerning these essentials to the granting of a certificate of public convenience and necessity, leaves its conclusions and order wholly unsupported. Petitioner, on the other hand says that the finding of the ultimate fact of public convenience and necessity is sufficient; that where the certificate

is granted it must be presumed that the Commission followed the law and considered and made favorable findings upon all elements essential to the granting of the application.

Section 28–3213 ND Rev Code 1943, provides in part:

". . . in a proceeding before an administrative agency, . . . the agency shall make and state concisely and explicitly its findings of fact and its separate conclusions of law, and the decision of the agency based upon such findings and conclusions. . . ."

This statute requires explicit findings. Explicit is defined by Webster's International Dictionary 2d ed as "Not implied merely, or conveyed by implication; distinctly stated; plain in language; clear; not ambiguous; express; unequivocal." The language of the statute is precise. It does not allow a construction which would permit an inference or a presumption of favorable findings upon matters not mentioned by the Commission. Furthermore, the designated findings of fact numbered III, IV, V, VI, VII, and IX (above quoted) are not findings of fact at all but are mere references to the evidence in the case and do not under the statute constitute a basis for the Commission's order. Chicago R. Co. v. Commerce Commission, 336 Ill 51, 167 NE 840, 67 ALR 938. Under the express language of the appeal statute, § 28–3219, supra, the order of the Commission in this case must be reversed.

This case is therefore remanded to the district court with directions to return the case to the Public Service Commission for further proceedings conformable to law.

CHRISTIANSON, Ch. J., NUESSLE, J., and McFARLAND and GRIMSON, District Judges concur.