**NORTHWESTERN BELL TELEPHONE COMPANY, a corporation, Appellant,**

v.

**Bruce HAGEN et al., Appellees.**

Civ. No. 9107.

Supreme Court of North Dakota.

Oct. 6, 1975.

Rehearing Denied Oct. 22, 1975.

Pearce, Anderson, Pearce, Thames & Pearce, Bismarck, for appellant; argued by William R. Pearce, Bismarck.

Ray H. Walton, Sp. Asst. Atty. Gen., for Public Service Commission and Wheeler, Wolf, Wefald & Durick, Bismarck, for Northern States Power Company, appellees; argued by Ray H. Walton and R. W. Wheeler, Bismarck.

ERICKSTAD, Chief Justice.

This case is an appeal from a judgment of the District Court, Burleigh County, which affirmed an order issued by the Public Service Commission on October 31, 1974. The appellant, Northwestern Bell Telephone Company (hereinafter Bell), was required to alter the interconnection of its toll switching facilities at Bismarck to permit the appellee, Northern States Power Company (hereinafter NSP), to use its proposed automatic toll ticketing equipment at its Minot telephone exchange.

Bell provides local service to more than 100 communities in North Dakota as well as long-distance service between communities served by Bell and independent companies. NSP provides local exchange service at Minot.

"Ticketing" denotes the measurement of long distance, or toll, calling in order to gather the information necessary for billing purposes. Under a traffic agreement of March 20, 1970, Bell agreed to provide toll ticketing for NSP's Minot exchange; in October 1972 NSP notified Bell of its plans to install an IBM System Seven toll ticketer and subsequently gave Bell notice to terminate the service contract.

In June 1973 Bell filed a complaint with the Public Service Commission; it was dismissed in August 1973 without prejudice. Later that month the PSC granted Bell's request for a rehearing. The matter was delayed while the companies attempted to resolve the dispute; in June 1974 NSP moved for an order directing Bell to show cause why it should not be ordered to alter the configuration of the equipment in its Bismarck toll center to permit NSP to initiate operation of its automatic toll ticketing equipment located at Minot, and the PSC

ordered the companies to upgrade service in Minot on a temporary basis by using Operator Number Identification (ONI) in addition to the Automatic Number Identification (ANI) system.

The complaint was heard on July 25 and 26, 1974, and on October 31, 1974, the PSC ordered Bell to modify its toll switching facilities at Bismarck in order to permit NSP to operate its automatic toll ticketing equipment in Minot.

Bell appealed to the District Court of Burleigh County and was granted a stay; on February 14, 1975, the District Court affirmed the PSC order. Bell requested and received a stay pending appeal to this Court.

The major issues in this case derive largely from three findings of fact listed in the PSC order of October 31, 1974:

"XI.

"Automatic toll ticketing equipment performs a toll accounting function rather than a telephone communication function.

\* \* \* \* \* \*

"XIV.

"Automatic toll ticketing service is a toll accounting or data processing service provided by NWB [Northwestern Bell] at its Bismarck, Grand Forks, and Fargo toll centers for itself and independent telephone companies connected to said toll centers. It is not a service offered to, nor purchased by, telephone subscribers or the general public.

\* \* \* \* \* \*

"XVIII.

"The advantages to NSP in providing its own data processing are (1) it will permit cycle billing of its telephone customers in the same mailing utilized to bill its electric customers, (2) it will give NSP better credit control over toll users and reduce its collection losses, and (3) it will permit NSP to consider a modified, op-

tional extended area telephone service (EAS) with Souris River Telephone Company between Minot and Minot Air Force Base should studies reveal the service is in the public interest."

Among the conclusions of law listed by the PSC are:

"I.

"This Commission has jurisdiction of the methods, practices and rates utilized by NWB and NSP in the transmission of conversations for the public and over connections between the two telephone utilities.

\* \* \* \* \* \*

"III.

"Whether NSP should operate its own automatic toll ticketing equipment or purchase that data processing service from NWB is a matter that should be left to the judgment of its management, where either method is reasonably adequate and efficient.

\* \* \* \* \* \*

"VI.

"End-to-end or unified service responsibility by each telephone company throughout its exchange area is consistent with the public interest where service standards and rates are effectively regulated. On this record, no order requiring the parties to eliminate dual ownership of telephone facilities or dual service responsibilities in the Minot exchange area should be made.

"WHEREFORE, Northwestern Bell Telephone Company is hereby ordered to modify the interconnection of its toll switching facilities at its Bismarck toll center as necessary to permit Northern States Power Company to operate its automatic toll ticketing equipment at its Minot exchange."

The order contained no explicit reference either to public convenience and necessity or to the public interest.

Appellant's contentions are threefold: (1) that a determination of the public interest was necessary to, but absent from, the PSC order; (2) that the order is unsupported by essential findings of fact or conclusions of law and contains findings of fact not supported by the evidence adduced at hearing; and (3) that procedural defects in the order allow this Court to reverse or modify the order on appeal from the District Court.

■ Telephone companies are within the jurisdiction of the Public Service Commission, both generally, Section 49–02–01(2), N.D.C.C., and specifically:

"49–21–02. Telephone companies—Common carriers.—All persons, firms, corporations, and other organizations engaged in the business of furnishing means of communication by telephone within this state shall be common carriers. The commission shall have general supervision of such common carriers." N.D.C.C.

■ Its jurisdiction does not extend into the enforcement of contracts between public utility companies, a judicial function that is rooted in tradition, constitution, and statute. *Williams Electric Cooperative v. Montana-Dakota Utilities Co.*, 79 N.W.2d 508, 517 (N.D.1956). The 1970 traffic agreement, a service contract between Bell and NSP, is not at issue in this case.

■ Nor does the PSC's jurisdiction include a "general power of management incident to ownership" of public utility property. *State ex rel. Southwestern Bell Telephone Company v. Public Service Commission of Missouri et al.*, 262 U.S. 276, 289, 43 S.Ct. 544, 547, 67 L.Ed. 981, 985 (1923). But public service "commissions are generally empowered to, and are created with the intention that they should, regulate public utilities insofar as the powers and operations of such utilities affect the public interest and welfare." 64 Am.Jur.2d, *Public Utilities*, § 232, p. 740.

In this case operation of the System Seven machinery affects both the public inter- est and the companies involved. That dual effect is manifest in Conclusion of Law III: "Whether NSP should operate its own automatic toll ticketing equipment or purchase that data processing service from NWB is a matter that should be left to the judgment of its management, where either method is reasonably adequate and efficient."

For the business purposes of NSP, the IBM System Seven will allow the company to bill its telephone customers in the same mailing as its electricity billing ("cycle billing") and will provide NSP "better credit control over toll users and reduce its collection losses." (Finding of Fact XVIII.) While Bell asserts that it can provide comparable service to NSP for cycle billing and for flagging high toll users, it does not presently provide either service, and the record does not indicate what additional costs would result to NSP if Bell were to provide those services. Testimony by Richard N. Hildahl, a consultant employed by NSP, indicated that the preliminary estimate of annual cost savings to NSP as a result of cycle billing is $20,000. In addition, NSP's subscribers would save in terms of postage, check-writing, and convenience.

■ As findings of fact, the PSC's determinations that cycle billing and better credit control will result from use of the System Seven are reviewable by this Court according to the substantial evidence test. *See, e. g., Tri-County Electric Cooperative, Inc. v. Elkin*, 224 N.W.2d 785, 791 (N.D.1974); *Agnew v. Hjelle*, 216 N.W.2d 291, 294 (N.D. 1974); *Geo. E. Haggart, Inc. v. North Dakota Work. Comp. Bur.*, 171 N.W.2d 104, 111 (N.D.1969). While we believe that the conclusory use of the word "advantages" is inappropriate in a finding of fact, substantial evidence in the record suggests that either system is reasonably adequate and efficient for purposes of cycle billing and credit control.

The third "advantage" to NSP listed in Finding of Fact XVIII is the potential inherent in the System Seven capabilities for optional measured extended area service

between Minot and Minot Air Force Base. Testimony by NSP's consultant indicated that the "particular community of interest" between Minot and the Air Force Base makes the measured approach to extended area telephone service especially applicable to this situation.

Bell did not allege that it can provide an optional measured extended area service to NSP, and the record provides no indication that Bell can do so.

While agencies cannot rationally base their findings and conclusions upon mere speculation, we believe the United States Supreme Court's reference to the responsibilities of the Federal Power Commission is analogous to the responsibilities of the North Dakota Public Service Commission:

> "The [Federal Power] Commission's responsibilities include the protection of future, as well as present, consumer interests." *In re Permian Basin Area Rate Cases*, 390 U.S. 747, 798, 88 S.Ct. 1344, 1376, 20 L.Ed.2d 312, 353–354; reh. den. 392 U.S. 917, 88 S.Ct. 2050, 20 L.Ed.2d 1379 (1968).

■ Thus, we believe that consideration of the capabilities of the System Seven ticketer in relation to a probable demand for measured extended area service was not inappropriate where it had been determined that either system is reasonably adequate and efficient for present purposes.

In regard to present consumer interests, the record demonstrates that there has been customer confusion as to who is responsible for telephone service in Minot. Certainly, the public has an interest in knowing whom to contact if service difficulties are encountered.

Of perhaps greater interest to the public is the effect that the PSC order will have on NSP's rate base and rate of return and on Bell's rate of return. NSP will need to make an initial capital expenditure of $90,700 and will incur toll-rating costs of nearly $60,000 per annum. Bell will lose about $87,000 annually that it would receive from

NSP for ticketing services. Since utilization by NSP of its System Seven toll ticketing equipment will reduce demands on Bell's centralized automatic message accounting (CAMA) trunks, Bell will spend less than usual to increase the capacity of its toll switching and ticketing equipment at Bismarck. (Findings of Fact XVI and XVII.)

A specific finding of fact as to the effect, if any, of the loss of revenue to Bell and of the increase in NSP's rate base on the rates of their subscribers would have been helpful to this Court in its review of the PSC order. Bell, as complainant, did not, however, seek to establish what effect, if any, might result. From the record, we think it clear that NSP's increased base rate will balance against a slightly increased return due to savings from the fees paid Bell for ticketing minus the costs of operating the System Seven ticketer. The loss of fees to Bell would appear to be somewhat offset by a diminished need for new CAMA trunks.

■ Failure by the PSC to make a specific finding concerning probable effects on rates is not adequate grounds for reversing and remanding so that the agency can make explicit and specific findings as required by Section 28–32–13, N.D.C.C., and *Hvidsten v. Northern Pac. Ry. Co.*, 76 N.D. 111, 33 N.W.2d 615, 619 (1948). Neither is an absence of specific findings that the public interest is involved in the controversy and that the public interest will be served by the order reversible error. This Court has distinguished *Hvidsten* in a case where the Workmen's Compensation Bureau failed to set forth separate findings of fact and conclusions of law. "There is precedent, no doubt, for remanding the case so that the statutes could be properly complied with, but in this case that would result only in additional delay. [Such procedural defects are] censurable but not jurisdictional. * * *" *Geo. E. Haggart, Inc. v. North Dakota Work. Comp. Bur.*, 171 N.W.2d 104, 108 (N.D.1969). The defects here are less pronounced than those in *Haggart*, and the

order and the transcript clearly show that the public interest was considered.

■ Because of the consumer interest, both present and future, in the installation and operation by NSP of its System Seven ticketer, its decision to install the equipment goes beyond the general power of management and becomes infused with the public interest. Similarly, because Bell enjoys a monopoly in its control of long-distance trunk lines, its refusal to alter its facilities at its Bismarck toll center in order to allow NSP use of its automatic toll ticketer falls outside the managerial discretion exception to PSC regulation. We conclude that the PSC is not precluded from regulatory intervention in a matter that involves managerial discretion between two companies where the interplay of such discretion results in freezing the status quo, where the status quo could be improved, or in degrading service, where the degradation can be eliminated.

■ Furthermore, we conclude that the PSC order is consistent with the public interest since the record demonstrates that NSP's investment will be largely offset by the retention of fees previously paid to Bell and since there are public benefits in both unified service responsibility and the potential for measured extended area service between Minot and Minot Air Force Base. Where a finding of an administrative agency is predicated upon its own special knowledge or expertise, as is the conclusion relating to unified service responsibility, courts generally defer to the determination. *Geo. E. Haggart, Inc. v. North Dakota Work.*

*Comp. Bur.*, 171 N.W.2d 104, 111–112 (N.D. 1969).

There remains the contention by Bell that Section 49–21–08, N.D.C.C., is applicable to this case and that the order is thereby deficient because the PSC made no finding of public convenience and necessity.

The statute reads as follows:

"49–21–08. Unnecessary duplication of exchanges prohibited.—Whenever any telephone company furnishes adequate service and supplies the reasonable wants of the people of the city or community in which it is operating, and complies with the orders of the commission, the commission shall not grant to any other telephone company the right to compete with such carrier until after a public hearing of all parties interested, and a finding by the commission that the public convenience and necessity may require such competing plant. Nothing contained in this chapter shall be held to prevent any telephone company from extending its lines within the limits of any city or village in which it at the time is lawfully operating a local telephone exchange." N.D.C.C.

■ We believe that Section 49–21–08, N.D.C.C., does not require a finding of public convenience and necessity in this instance. Rather, it precludes granting a "right to compete" with a telephone company that "furnishes adequate service and supplies the reasonable wants" of its customers. While the heading to a code section does not constitute a part of the statute, Section 1–02–12, N.D.C.C., it may be used to ascertain legislative intent.[1] The

1. This is especially true where the heading to the code section is the same as the heading to the section of the bill. *See* Sands, IIA Sutherland Statutory Construction, p. 94 (4th ed. 1973). S.L.1915, Ch. 209, § 10, from which Section 49–21–08, N.D.C.C., is derived, reads as follows:

"§ 10. Unnecessary Duplication of Exchanges Prohibited.] Whenever any telephone company furnishes adequate service and supplies the reasonable wants of the people of the city or community in

which it is operating, and complies with the orders of the Commission, said Commission shall not grant to any other telephone company the right to compete with such carrier until after a public hearing of all parties interested, and finding by the Commissioners that the public convenience and necessity may require such competing plant, *provided*, that nothing in this Act shall be held to prevent any telephone company from extending its lines within the limits of any city or village in

heading of Section 49–21–08, N.D.C.C., speaks in terms of "unnecessary duplication of *exchanges*." [Emphasis added.] Here, the issue is not between "exchanges."

We also note that another section of the bill from which Section 49–21–08, N.D.C.C., originated required telephone companies to obtain permits from the Board of Railroad Commissioners (predecessor to the PSC) for the "purpose of constructing any new plant, duplicating any existing plant or *any part thereof*." [2] [Emphasis added.] That bill section was subsequently repealed by S.L. 1919, Ch. 192, § 55.

We therefore conclude that Section 49–21–08, N.D.C.C., does not apply to this case and that accordingly the PSC did not commit error in failing to make a specific finding that public convenience and necessity required the use by NSP of the toll ticketer.[3]

■ We hold nevertheless that the public interest is involved in the controversy; that consideration of that interest is implicit in the findings of fact, conclusions of law, and order of the PSC; that the essential findings of fact are supported by substantial evidence; that the conclusions of law are supported by the evidence and are not contrary to law or authority; and that the order is not so defective as to constitute reversible error. Therefore, the decision of the District Court is affirmed.

VOGEL, PEDERSON, PAULSON and SAND, JJ., concur.

---

which it is at the time lawfully operating a local telephone exchange." [Emphasis in original.]

The code section varies only slightly from the bill section, and both include the heading "Unnecessary Duplication of Exchanges Prohibited."

2. S.L.1915, Ch. 209, § 9, reads in its entirety as follows:

"§ 9. Permit to be Obtained for Construction of Plants.] No telephone company shall exercise any rights or privileges for the purpose of constructing in any town, village or city of this state any new plant, duplicating any existing plant or any part thereof, or the removal or discontinuance of any plant or any part thereof, without first having obtained the permission and approval of the Board of Railroad Commissioners."

3. Bell attacks the PSC's finding that the "[a]utomatic toll ticketing equipment performs a toll accounting function rather than a telephone communication function." (Finding of Fact XI.) Since we believe it is the public interest that triggers the PSC's jurisdiction and that must rationally support the order, that finding is not essential to our decision. But we do note that testimony by one of Bell's own witnesses, both on direct and on cross-examination, provides substantial evidence to support the finding.