## Louis A. Nelson v. Charles A. Petterson.

### Gen. No. 13,039.

1. STATUTE OF LIMITATIONS—*when begins to run as against action of tort*. The Statute of Limitations begins to run as against a cause of action sounding in tort of which fraud is the basis as soon as the fraud and the consequent injury have occurred and not when the fraud is discovered, unless there has been a fraudulent concealment of the cause of action.

2. STATUTE OF LIMITATIONS—*what does not toll running of, in action of tort*. An acknowledgment does not revive a cause of action sounding in tort.

3. BANKRUPTCY—*what discharge in, does not affect*. A cause of action arising by reason of the fraud of a bankrupt in obtaining property is not released by a discharge in bankruptcy.

4. BANKRUPTCY—*test to be applied in determining whether cause of action predicated upon fraud*. It is the nature of the transaction, not the form of the action, which is looked to in order to determine whether a cause of action is relieved against by a discharge in bankruptcy.

Action of *assumpsit*. Appeal from the Superior Court of Cook county; the Hon. AXEL CHYTRAUS, Judge, presiding. Heard in this court at the March term, 1906. Affirmed. Opinion filed February 18, 1907.

HELMER, MOULTON & WHITMAN, for appellant.

HENRY C. BEITLER and JOHNSON & MOLTHROP, for appellee.

MR. PRESIDING JUSTICE BROWN delivered the opinion of the court.

This cause comes to us on the pleadings entirely.

The appellant who was plaintiff below, sued the appellee, who was defendant below, for $1,750, out of which he alleged the defendant had swindled him by inducing him to purchase from the defendant a parcel of land through representations that there was no encumbrance upon it, the said representations being false and known to be false by the defendant.

The *praecipe* and summons, dated January 7, 1904,

indicate a suit in *assumpsit*. There was an order changing the form of action to "trespass," August 10, 1904, and an order changing again the form of action from trespass to *assumpsit,* November 17, 1905. The amended declaration, which forms the basis of all the subsequent pleadings, was filed November 17, 1905. It is in three counts. The first count alleges that on November 15, 1892, the defendant for the purpose of inducing the plaintiff to purchase a certain described piece of land, "deceitfully promised and represented" that he, the defendant, and his wife were the owners thereof in fee simple, and that there was no encumbrance thereon, etc., and that the plaintiff believed the representations and purchased the land and paid the defendant $1,750. "Yet," the declaration proceeds, "the defendant did not regard his said promise, but thereby deceived and defrauded the plaintiff in this," that the said representations were untrue and known to the defendant to be untrue, and that there was a mortgage of $13,000 on the property, which was afterwards foreclosed, so that the property was entirely lost to and taken away from the plaintiff. The count then concludes: "And plaintiff avers that said parcel of land in this count first above described, by reason of the premises there became and was of no value to the plaintiff, and that within five years next before the commencement of this suit, and within five years next before the filing of this last amended declaration, the defendant admitted in writing to the plaintiff the existence of said cause of action above set forth, and the defendant's indebtedness to the plaintiff based thereon, and promised the plaintiff in writing to pay the same. Yet the defendant to pay the same, or any portion, although often requested by the plaintiff so to do, has hitherto and does still refuse."

The second count of the declaration alleges, in describing the same transaction of purchase and sale, that the then existing mortgage of $13,000 at the time

of the bargaining between the plaintiff and defendant, had not been placed of record, and that it was the duty of the defendant to inform the plaintiff of the existence of the encumbrance, but that he fraudulently refrained from informing the plaintiff of the execution and existence of said encumbrance. The plaintiff, as he alleges, relied upon the silence of the defendant as an indication or representation by the defendant that there was no such encumbrance, and the defendant knew that by his silence and failure to inform the plaintiff of the existence of said encumbrance or deed of trust, the plaintiff would conclude and believe that no encumbrance existed as a lien on the defendant's title to said land. The count then concludes like the first one, with a statement that the land had been foreclosed under the mortgage, and that within five years the defendant "had admitted in writing the cause of action" and promised in writing to pay his indebtedness to the plaintiff based thereon.

The third count, in alleging the same transactions, avers that the defendant "promised that he, the defendant, and his wife, were then and there the owners of the land in fee simple, and that there was then no encumbrance or mortgage on said property," etc. "Yet the defendant," the count avers, "did not regard his said promise, but thereby deceived and defrauded the plaintiff," etc. The count closes like the other, with the allegation that within five years next before the commencement of the suit and within five years next before the filing of this last mentioned declaration, the defendant admitted in writing to the plaintiff the existence of said cause of action above described, and the defendant's indebtedness to the plaintiff based thereon, and promised the plaintiff in writing to pay the same. The declaration then concludes:

"Yet the defendant to pay the same, or any part thereof, though often requested by the plaintiff, has refused and still does refuse so to do. Wherefore the

plaintiff says that the defendant has wilfully deceived and defrauded the plaintiff, and that he, the plaintiff, is injured and has sustained damages to the amount of four thousand dollars, and therefore he brings suit," etc.

To this declaration and each count thereof the defendant pleaded: First, the general issue of *non assumpsit;* second, the Statute of Limitations—"that the said supposed cause of action in the said amended declaration," etc., did not accrue within five years before the commencement of the suit; and, third, that on September 12, 1904, the defendant had been discharged in bankruptcy under the Act of Congress, and that the supposed cause of action was not "in respect of any such debts or debt as are or is by the said Act excepted from the operation of a discharge in bankruptcy."

To the plea of the Statute of Limitations and to the plea of the discharge in bankruptcy the plaintiff demurred. The demurrers were overruled as to both pleas.

The plaintiff elected to stand by his demurrer to the plea of the discharge in bankruptcy, evidently thus intending to bring before us as to this plea (although we think somewhat inartificially) the question whether the alleged cause of action was one which was released by the discharge in bankruptcy. He took leave, however, to reply to the plea of the Statute of Limitations and filed *instanter* a replication, which was a repetition of the paragraph found in each count of the amended declaration, that within five years of the commencement of the suit, and within five years of the filing of the amended declaration, the defendant admitted in writing to the plaintiff the existence of said cause of action, and promised the plaintiff in writing to pay the same. He added to this, however, an averment in the plea that the new promise was "before defendant's alleged discharge in bankruptcy," although neither the declaration nor

the particular plea to which this replication was made contained any reference to a discharge in bankruptcy, which as stated, was set up by another plea.

To this replication the defendant filed a general demurrer, and this demurrer was sustained by the court. The plaintiff elected to stand by the replication in order to bring before us the second question—whether an express promise to pay the indebtedness alleged to have sprung from the tort within the period of limitation did not "toll" the statute.

After this election by the plaintiff to stand by his demurrer to the plea of discharge in bankruptcy, and to stand by his replication to the plea of the Statute of Limitations, judgment was entered for the defendant and the plaintiff appealed. He has assigned for error the action of the court on the demurrers described.

We need spend no time in pointing out inartificiality in the pleadings. The questions before indicated are treated by the parties and will be treated by us as fairly before us for decision.

The first inquiry naturally arising is what is the gist of the plaintiff's action as shown by the declaration? Is it the fraud or tort which is described and set out at length as occurring in November, 1892, or is it a contract formed by a promise in writing, made within five years, to pay a certain alleged indebtedness, which indebtedness originally arose from a tort and constituted the consideration on which this written promise was given? Either view of this might perhaps reasonably be taken, for although there can be no doubt that the cause of action had its primary origin in the alleged fraud, an acknowledgment and settlement of a tortious fraud of this kind may perhaps be good consideration for a contract for the payment of money on the ground at least of an accord and satisfaction, if not of money had and received, although this has in some cases been denied.

The action was at first apparently brought in *as-*

*sumpsit,* and was then changed into what we presume was intended to indicate that it was an action *ex delicto,* then it was again by order changed into *assumpsit* and appeared in form to be *ex contractu.* But this, for the purpose of our investigation, in our opinion, makes no difference. The real question is, as we have above indicated: Is the cause of action sued on the original fraud, or is it the promise to pay to the plaintiff money in the defendant's hands equitably belonging to the plaintiff because unwarrantably taken from him? We might concede it to be one or the other for the purposes of the argument, but it cannot be both, and if it is either, the judgment of the court below is justified. For if this is an action on the original tort—as it may well be considered notwithstanding its form *ex contractu* (Penoyer v. People, 105 Ill. App. 481; Barney v. Chapman, 21 Fed. Rep. 904), the Statute of Limitations has cut off the plaintiff's remedy. Counsel for plaintiff in argument say that ''In this class of cases the statute begins to run from the time the fraud is discovered.'' But there must be some averment of concealment, or at least of ignorance, *after* the payment and up to a time within the bar of the statute, somewhere in the pleadings before it can be assumed that running of the statute was delayed after the money was paid. There is nothing of the sort here. The replication to the plea of the statute does not allege ''fraudulent concealment,'' but a new promise. If the statute did begin to run in 1892, the bar had been long completed before the date of the alleged new promise, and an ''acknowledgment'' in a case of tort does not revive the cause of action. 2 Greenleaf on Evidence, sec. 446, and cases there cited; Goodwyn v. Goodwyn, 2 Ga. 115; Ott v. Whitworth, 8 Humphrey, 494; Peterson v. Breitag, 88 Iowa, 418; Angell on Limitations, 219.

Counsel for plaintiff contends that the applicable language in these authorities is either *obiter dictum*

or founded upon a theory of the operation of the statute differing from that adopted in this state, but we fail to see any reason to judge them inapplicable or to believe that they would not be considered by our Supreme Court as Judge Breese evidently considered like cases in Keener v. Crull, 19 Ill. 189, as stating a settled rule of the law. Judge Breese in his vigorous and remarkable opinion in that case, did not argue against the doctrine contained in them; he argued against departing from it in other cases.

Therefore we hold that if this action of Nelson is one on the transaction of 1892, the court below rightly sustained the defendant's demurrer to the plaintiff's replication to the plea of the Statute of Limitations. The court having so sustained it, and the plaintiff having elected to stand by the replication, the judgment necessarily followed, whether the decision on the other demurrer was or was not correct.

As we view the matter, it is not easy to reconcile the decisions of the trial judge on the two demurrers except on the theory that he thought the plea of discharge in bankruptcy called for a replication rather than a demurrer to test the question which the parties consider involved in it. The effect of the decision was to hold both pleas good. If either one was good, the action is barred and the judgment correct. But while it seems to us one or the other must set out a good defense, it seems equally clear that if the question was properly raised by the pleadings, one or the other. must be held to be insufficient.

We have seen, however, that on the theory that the action was upon the transaction of 1892, and that the "acknowledgment" and "new promise" averred in the declaration were mere pleading in anticipation of the plea of the Statute of Limitations, that plea is good.

We think that considered on the same theory, the plea of discharge in bankruptcy presents no defense

because of the falsity of its allegation that the supposed cause of action was not in respect of any such debts or debt as are or is by the said Act excepted from the operation of a discharge in bankruptcy. The court below may have thought that such an allegation could not be reached by a demurrer, but should be traversed by a replication setting forth the facts that showed the cause of action to be within the exceptions in the Act, which should also be set forth. This would, however, have postponed the real issue of law but one step, and it is as well for our purpose to consider it (as do the parties) raised by the demurrer to the plea.

If the action is on the transaction of 1892, as we have said, the plea is bad. Before the amendment of the Bankruptcy Act in 1903 it would have been good— Crawford v. Burke, 195 U. S. 176—for the Act before amendment only excepted from the discharge *judgments* in actions for frauds or obtaining property by false representations. After the amendment, however, it excepted all "liabilities for obtaining property by false pretenses or false representations." And under it the alleged liability in this case resulting from the transactions of 1892 would not be discharged.

For the plaintiff is right, we think, in his contention that without regard to the form of the action, the test is the real nature of the transaction *which is the cause of action*. Certain cases under English and United States Bankruptcy Laws have, however, held the other way, as the Supreme Court of the United States pointed out in Crawford v. Burke, *supra*.

Conceding, however, that the form of action is immaterial, the cause of action is not, and if we take the only view of the case in which the Statute of Limitations does not present a good defense, namely, that within five years from the beginning of the action the defendant made a contract, based on the consideration of having money in his hands equitably be-

longing to the plaintiff, to pay that money to the plaintiff, and that the action is on that contract, then the discharge in bankruptcy is a bar to it. In that case the allegations of the declaration concerning the misrepresentations, and the rather strained use of the word "promised" in connection therewith, became mere recitation of a consideration for the gist of the declaration which is contained in the assertions of *"indebitatus assumpsit"* in the concluding paragraph of each count. The cause of action in that view is not the tort of 1892, but the promise in writing within five years of January 7, 1904, which, although not reviving a cause of action in tort, was in itself an obligation founded on a sufficient consideration. Being such a cause of action, however, it was released by the discharge in bankruptcy.

In either view the judgment is correct and is affirmed.

*Affirmed.*