Chief Judge Desmond.
As this appeal comes to us we must determine the correctness of decisions below which dismissed on the pleadings causes of action numbered 1, 2, 4, 7 and 8 and granted summary judgment in favor of defendant on a Statute of Limitations ground as to cause of action numbered 9. All of these counts except number 9 derive from the manufacture and sale by defendant for and to plaintiff under a 1948 contract for a price of $292,480 of four generating sets for plaintiff’s electric generating plant in Nogales, Arizona. The ninth cause of action is alleged as having arisen out of a similar manufacture and sale at a price of $254,356 of four generating units for use at plaintiff’s plant at Newport, Vermont.
Leaving the ninth (Newport) count until later, we will deal first with the Nogales causes of action. The Nogales contract was made in September, 1948 through the acceptance by plaintiff of defendant’s written proposal containing this language :
“ The rating of this equipment at an elevation of 4000 feet will be 1200 H.P., 842 KW. We believe, however, that the units equipped in accordance with the proposal specifications will be capable of delivering continuously 1287 H.P., 900 KW at 4000 feet elevation above sea *413 level with a short time rating of 10% additional capacity for two hours continuous out of every twenty-four but cannot guarantee such performance at this time due to insufficient actual experience.”
It is not contended that the above warranties were breached but it is alleged that in selling this equipment defendant, by oral representations and impliedly, warranted that the generating sets would be capable of continuous operation at full capacity for a normal machine life span of 30 years or more and that they would be suitable and dependable for plaintiff’s purposes and would meet the requirements of plaintiff’s Nogales plant. However, as both courts below held, plaintiff is met by an impassable obstacle in the form of a settlement agreement concluded in May, 1950 between the parties. The Nogales sets were installed and began operating in June, 1949 and soon afterward disputes arose as to their performance. In November, 1949 Citizens sued American in the United States District Court for the Southern District of New York for damages alleging that the Nogales sets were unmerchantable and defective, that they did not correspond to the description by which they were sold and purchased, that there were various listed defects, and, specifically, that they were incapable of generating more than 3,200 EW together or 800 EW apiece. While the Federal court action was pending negotiations arose for an adjustment of the dispute and each party appointed two engineers to conduct joint operating tests. The four engineers went to Nogales in early 1950 and later made a joint report to the parties in which they described comprehensive tests and reported generally that the engines were producing up to the levels stated in the contract. Based on this report and with the report attached and made part thereof, a settlement agreement was made and the Federal court action discontinued. The settlement agreement recited the sale and installation of the Nogales equipment and that disputes had arisen and that the engineers for the parties had made a joint report. It was stipulated as fact that each of the sets had a capacity for continuing operation of 842 KW plus an overload for two hours a day and that such capacity had been demonstrated by the tests described in the annexed engineers’ report and had been satisfactorily proven by ordinary operation. The treaty contained a flat statement *414 that plaintiff “ accepts ” the performance of the sets as to KW capacity, fuel consumption and lubrication and as to all other characteristics and specifications set forth in the report and that plaintiff ‘ ‘ waives ’ ’ all past, present or future claims for damages for delay in delivery or installation and damages for any failure of defendant to meet any obligation with respect to the generating sets or as related to any reliance by plaintiff on any information or representations made by defendant. There is another statement in the agreement that plaintiff “ accepts ” the generating sets as having been constructed according to the contract specifications. Plaintiff "was granted a credit for about $5,000 for some work which plaintiff had done on the sets and was granted a further credit of $42,500 to be applied against a balance still owing on the four sets.
The May, 1950 agreement just above summarized not only appears on its face to be a complete settlement, entered into after investigation and report by experts by both sides of all conceivable complaints about these generating sets, but it goes further than that and says that the present plaintiff “ accepts ” the sets as meeting certain prescribed standards of efficiency and performance. Even beyond that, plaintiff not only discontinued a suit which it had brought for damages for these alleged defects but accepted a substantial reduction in price to cover any deficiency in the sets. If this agreement were not so sweeping in terms and if it did not involve an acceptance of the sets as they were found to be and to operate, some cause of action might possibly have survived. But if this agreement was not intended to prevent any future claim of any kind then such a result could not be obtained by the use of language. Plaintiff does plead that at the time of the tests defendant falsely and fraudulently represented that the equipment would last for 30 years, etc. But any survival of such a claim would be entirely inconsistent with the language and purpose of the agreement whereby plaintiff “ accepts ” the generators after elaborate tests and in consideration of a large reduction in price.
What plaintiff is really arguing as to the Nogales causes of action is that an alleged implied warranty of suitability for 30 years of operation was breached long after the making of the 1950 agreement because, according to plaintiff, the unsuitability of these sets purchased for 30 years of operation did not and *415 could not become apparent by 1950. The first answer is that by the 1950 agreement plaintiff, after a report by its own engineers, accepted the sets at a reduced price. Such an arrangement simply makes no sense unless it was intended to terminate controversies forever. There is another answer, also. The settlement agreement itself waives all past, present or future claims for failure of attainment of expected performance or for any failure of defendant to meet any of its obligations with respect to the sets or because of any reliance by plaintiff on information furnished or representations made concerning the characteristics of the sets. Plaintiff cites a line of cases such as Woodworth v. Rice Bros. Co. (193 App. Div. 971, affd. 233 N. Y. 577) to the effect that certain warranties will be read as guaranteeing that certain facts will occur in the future. The Wood-worth case involved a sale of peach trees and an agreement that, when these trees should begin to bear, the peaches would be of certain varieties, which turned out to be untrue. Such cases have no relevance to ours. The characteristics and operating ability of these generating sets were presently existing facts at the time of installation. When a substantial period of operation raised a doubt or dispute as to whether the sets had the characteristics expressly or impliedly warranted, the parties had a joint test made. The representatives jointly examined into the true present facts as to the characteristics and made a settlement accordingly.
For reasons similar to those just above given there is no need here to make an analysis in depth as to the effect of “ no-warranty ” and “no-reliance” clauses in contracts (see Danann Realty Corp. v. Harris, 5 N Y 2d 317, and Crowell-Collier Pub. Co. v. Josefowitz, 5 N Y 2d 998).
The discussion just concluded disposes of all the causes of action except number 9 which, as we have said, arose out of the sale by defendant to plaintiff of four generating sets for use at Newport, Vermont. The pleading of this cause of action describes the Newport sale and installation, recites warranties expressed in the agreement and alleges implied warranties of suitability for plaintiff’s purposes and of capability for continuous operation. Suit for alleged breach was not begun until February 14, 1955, when the ninth cause of action was for the first time asserted in an amended complaint. Concededly, this *416 date was more than six years after the delivery and installation at Newport. Accordingly, the courts below held that the ninth cause of action was barred by the six-year Statute of Limitations (Civ. Prac. Act, § 48, subd. 1). Justice Babin, dissenting in the Appellate Division, was of the opinion that there was a question of fact as to when the period of limitation would start to run since, as he saw it, at least one of the implied warranties was such that its breach might not be discoverable for a long time — that is, the alleged implied warranty that the sets would be good for continuous operation for 30 years. He, of course, agreed to the general rule that a cause of action for a breach of warranty accrues at the time of sale and not afterward and is barred six years after the sale. However, the dissenting Justice, citing Woodworth v. Rice Bros. Co. (233 N. Y. 577, supra), wrote that when a warranty refers to a performance at some far future time the general rule as to the beginning point for the Statute of Limitations should not apply. But such a holding would be a change in a settled New York rule which goes back beyond Allen v. Todd (6 Lans. 222 [1872], another fruit tree case) and is to the effect that where the warranty is as to kind, characteristics, suitability, etc., of the sold article the limitation runs from the date of sale and present inability to ascertain quality or condition is irrelevant. Such is the New York law as to the accrual of a cause of action for implied warranty (Blessington v. McCrory Stores Corp., 305 N. Y. 140, 147; Kakargo v. Grange Silo Co., 11 A D 2d 796, motion for leave to app. den. 8 N Y 2d 711).
Plaintiff, it is fair to say, does not dispute the standard rule of law just above set forth. This, says plaintiff, is a different sort of case where the alleged implied warranty was not only as to present suitability but that the sets 6‘would be and would continue to be capable of continuous operation at full rated capacity for a full normal machine life span of at least 30 years ” (amended complaint). A close inspection of this pleading makes it clear that what plaintiff is alleging is: first, that defendant expressly represented that the sets were so designed and constructed that with normal operation they would last 30 years, and, second, that there was an implied warranty that the sets would be capable of continuous operation at full rated capacity for the usual life span of 30 years. In other words, *417 even according to the complaint defendant never warranted that these machines would still be operating after 30 years. Plaintiff wishes the courts to imply, from what was said, a warranty that they would still be in existence and running full tilt at the end of and after 30 years. A warranty express or implied that a machine is so built that it should last 30 years is a warranty of present characteristics, design and condition and should not be stretched by implication into a specific promise enforcible at the end of 30 years. As Williston on Sales (rev. ed., Yol. 1, p. 549, n. 5) explains, “ a representation that a machine will work well for five years is a representation as to its present condition in effect. The representation means that the machine as it stands is so well constructed as to be capable of enduring use for that period ”. As to Southern Cal. Enterprises v. Walter & Co. (78 Cal. App. 2d 750 [an express warranty]), that decision announces a rule contrary to the one always accepted and applied in New York (see Justice Shientag’s able opinion in Liberty Mut. Ins. Co. v. Shelia-Lynn, Inc., 185 Misc. 689, 692 et seq., affd. 270 App. Div. 835). There is, of course, an element of unfairness in requiring a purchaser to sue within six years after purchase to enforce an agreement that the article which is the subject of the sale will last for 30 years. But this is the same kind of “ unfairness ” that may result from almost any Statute of Limitations. Indeed it results from the fundamental New York theory of limitations as expressed in article 2 of the Civil Practice Act which makes all limitations except a particular specified one run from breach and not from discovery. Probably this complaint does not really raise the question since as pointed out above plaintiff does not allege that in these elaborate contracts involving large sums of money defendant in terms promised in writing or orally that the machines would work well for 30 years. The most that plaintiff is willing to assert is that such a promise should be implied from what was actually said.
The judgment should be affirmed, with costs.