**JONES & LAUGHLIN STEEL CORP., a corporation, Plaintiff,**

v.

**JOHNS–MANVILLE SALES CORP., a corporation, Defendant and Third-Party Plaintiff,**

v.

**BROWN & KERR, INC., J. M. Foster Company, Inc., Western Contracting Corporation, and S. M. Wilson Company, d/b/a Hennepin Contractors, Defendants,**

v.

**PULLMAN, INC., Third-Party Defendant.**

**Civ. A. No. 77–759.**

United States District Court, W. D. Pennsylvania.

June 26, 1978.

David B. Fawcett, Jr. and Richard S. Dorfzaun, Pittsburgh, Pa., for Jones & Laughlin Steel Corp.

Alexander Unkovic and Frederick J. Francis, Pittsburgh, Pa., for defendant Johns-Manville.

John R. Walters, Jr., Pittsburgh, Pa., for Brown & Kerr.

Thomas A. Lazaroff, Pittsburgh, Pa., for defendant Hennepin Contractors.

Michael R. Plummer, Pittsburgh, Pa., for third-party defendant Pullman.

## OPINION

WEBER, Chief Judge.

This is an action brought by Jones & Laughlin Steel Corp. (J&L) to recover damages resulting from certain defects in the roof of its steel plant in Hennepin, Illinois. Plaintiff contends that it will be necessary to replace the roof at a cost of about 3.7 million. Presently before the Court are seven motions for summary judgment or partial summary judgment filed by various defendants. The motions raise questions of (1) the appropriate statutes of limitations and when the limitation periods begin to run; (2) whether the roofing bond given by defendant Johns-Manville limits its liability to the amount of the bond; and (3) whether the claims for contribution or indemnity are barred under Illinois law.

It is not disputed that the roof in question was completed by August 30, 1967. This action was filed August 7, 1972 against defendant Johns-Manville Sales Corp. (J–M), who manufactured and sold the insulation and components of the roof membrane and who, according to J&L, recommended specifications, approved the design of the roof, and performed inspection services.

J–M in turn joined as third-party defendants: Brown & Kerr, Inc. (Brown & Kerr), who was the subcontractor responsible for installing the roof insulation and built-up roof membrane; the Swindell-Dressler Company Division of Pullman, Inc. (Swindell-Dressler), who provided engineering services with respect to the planning, design and preparation of specifications for the plan; and Hennepin Contractors (Hennepin), a joint venture composed of J. M. Foster Company, Inc., Western Contracting Corp. and S. M. Wilson Company, who together acted as general contractor for the construction of the steel mill in Hennepin, Illinois. J–M's joinder of these parties was on November 7, 1972. By motion filed March 9, 1973, and approved by the Court on April 11, 1973, plaintiff J&L amended its complaint and added Brown & Kerr and Hennepin as original defendants. These parties were thus joined by plaintiff at a time in excess of five years from the date the roof was completed. Five years is the general period of limitations applicable to actions to recover damages for an injury to property under Illinois law, unlike the six year statute of limitations under Pennsylvania law. The defendant and third-party defendant have filed various cross-claims against each other, alleging rights to contractual or common law indemnity or contribution.

Defendant J–M has filed two motions for summary judgment. One raises the statute of limitations defense. The second, which requests partial summary judgment only, seeks an order limiting liability to $253,120, which is the amount of a roofing bond issued by J–M to J&L.

Defendant Hennepin Contractors has filed four motions for summary judgment, one each for the four other parties to this lawsuit. As to plaintiff J&L, Hennepin designates its motion as one for partial summary judgment and raises two grounds: (1) that the claim in the amended complaint that added Hennepin as a direct defendant was barred by the Illinois five year statute of limitations and (2) that no implied warranty of fitness for intended purpose exists, as the Uniform Commercial Code is inapplicable to construction contracts and in any event carries a four year statute of limitations. As to co-defendant J–M, Hennepin presses three grounds: (1) the statute of limitations, (2) the lack of any express or implied warranties of fitness for intended purpose, and (3) the non-recognition of indemnity or contribution among joint tortfeasors under Illinois law. As to co-defendant Brown & Kerr and third party defendant Swindell-Dressler, Hennepin rests its summary judgment motion solely on the non-recognition of indemnity and contribution against joint tortfeasors under Illinois law.

Finally, Brown & Kerr has moved for summary judgment on all claims by plaintiff J&L and all claims for contribution asserted by the other parties. Brown & Kerr relies on the statute of limitations against plaintiff, and the asserted lack of any right of contribution under Illinois law as to the other parties.

We note that neither plaintiff J&L nor third party defendant Swindell-Dressler has filed a motion for summary judgment, and to some extent their positions are temporarily aligned.

Our initial inquiry is whether Illinois law applies, and if so, how it is to be applied. No party questions that indemnity and contribution are recoverable under Pennsylvania law. Nor is there any doubt that the claims are timely if Pennsylvania's six year statute of limitations is applicable. The applicability of the four year limitation period in § 2–725 of the Uniform Commercial Code, which has been adopted in both Pennsylvania and Illinois, has also been raised and will be discussed.

I.  *The Statute of Limitations*

■ Since this is a diversity action, we must, like a Pennsylvania state court, apply the Pennsylvania choice of law rules to determine what statute of limitations is applicable. *Guarantee Trust Co. of New York v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). In most situations, Pennsylvania courts apply the statute of limitations of the forum, *Freeman v. Lawton*, 353 Pa. 613, 46 A.2d 205 (1946), but there is a statutory exception to this rule:

"When a cause of action has been fully barred by the laws of the state or country in which it arose, such bar shall be a complete defense to an action thereon brought in any of the courts of this commonwealth." 12 P.S. § 39.

Thus, if the cause of action "arose" in Illinois, reference must be made to the appropriate Illinois statute of limitations. In determining where the cause of action arose, we are guided by *Mack Trucks, Inc. v. Bendix-Westinghouse Auto. A. B. Co.*, 372 F.2d 18 (3d Cir. 1966). *Mack Trucks*

held that a manufacturer's action against a supplier for indemnity for a Florida judgment paid more than three years earlier was barred by the Florida statute of limitations. The Court there said:

"We think the concept of when a cause of action arises and the concept of where a cause arises, both used to aid in the application of statutes of limitations, are *in pari materia*. In other words, the cause arises where as well as when the final significant event that is essential to a suable claim occurs."

In the present case, the "final significant event" occurred in Illinois, whether this event is the construction of the roof or the occurrence or appearance of the damage to the roof.

The same result is reached if we apply the approach to this problem espoused by Judge Freedman in his dissent in *Mack Trucks*. He suggested that "when" a cause of action arises should be determined by applying the general choice of law principles as found, for example, in *Griffith v. United Airlines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964). *Griffith* rejected the old "lex loci delicti" rule in favor of what might be called a "center of gravity" or "grouping of contacts" test under which the law of the jurisdiction having the greater interest in the outcome is to be applied.

■ Plaintiff argues, however, that even if Illinois law applies and the cause of action arose in Illinois, Pennsylvania law still applies to determine *when* the cause of action arose. At first blush this argument appears to be completely without merit. The Pennsylvania Borrowing Statute, 12 P.S. § 39, requires the court to determine whether the cause of action is barred by the laws of the jurisdiction under which it arises. It seems apparent that such determination depends not only on the period of limitations prescribed by the foreign jurisdiction but also on its rules as to when the statute begins to run and what circumstances may toll its running.

Nevertheless, in *Prince v. Trustees of the University of Pennsylvania*, 282 F.Supp. 832

(E.D.Pa.1968), a medical malpractice-negligence action, the court held after lengthy analysis that the court should look to Pennsylvania law alone in determining when the foreign statute of limitations begins to run.

According to *Prince's* analysis of *Mack Trucks,* the Circuit in *Mack Trucks* first determined *when* the cause of action arose by reference to Pennsylvania law. Then, says *Prince,* the Circuit equated *"when a cause of action arose"* with *"where a cause of action arose"*, finding them to be *"in pari materia "*. Finally, says *Prince,* the Circuit applied the Florida statute of limitations as a simple chronological measure from that date, *which was determined under Pennsylvania law.*

We do not agree with *Prince's* reading of *Mack Trucks. Mack Trucks* did not decide the question presented in *Prince* and in the case at bar. There was no suggestion in *Mack Trucks* that Florida would have commenced the running of the statute of limitations on a date different than Pennsylvania would have. In choosing the date on which the underlying judgment was satisfied as the date on which the statute began to run, *Mack Trucks* relied not only on Pennsylvania cases but also on cases from other jurisdictions.

"In this context, the familiar rule is that the statute begins to run when the cause of action arises, as determined by the occurrence of the final significant event necessary to make the claim suable. *Foley v. Pittsburgh Des Moines Co.,* 1949, 363 Pa. 1, 68 A.2d 517; *Bell v. Brady,* 1943, 346 Pa. 666, 31 A.2d 547; *Shaffer's Estate,* 1910, 228 Pa. 36, 76 A. 716. With reference to claims for indemnification for loss, this means that the cause arises when the plaintiff sustains the loss for which he can claim indemnification. *Chicago, R. I. and Pacific Ry. v. United States,* 7th Cir. 1955, 220 F.2d 939; *Northwest Airlines, Inc. v. Glenn L. Martin Co.,* D.Md.1958, 161 F.Supp. 452; *Hidick v. Orion Shipping & Trading Co.,* S.D.N.Y.1957, 157 F.Supp. 477; *Globe Indemnity Co. v. Larkin,* 1944, 62 Cal.App.2d 891, 145 P.2d 633". 372 F.2d at 20.

*Mack Trucks* explicitly mentioned the possibility that the statute might be tolled for some reason:

"There is no contention or evidence that the statute was tolled for any period. Accordingly, since this cause accrued not later than June 30, 1960, the date upon which Mack's satisfaction of the Florida judgment was entered in the records of the Florida court, the present action was barred at the time of its filing on October 10, 1963." Id. at 21.

A further difficulty in applying *Prince,* which is not binding on this court, is that its finely honed analysis of *Mack Trucks* was unnecessary to its outcome. That is so because the court held that regardless of its determination of that issue both Pennsylvania and New Jersey law permitted the cause of action as both followed the "discovery" rule under the circumstances of that case. We cannot as J–M suggests, dismiss the *Prince* language as a mere dictum, but the fact that it is an alternative holding does mitigate its impact.

We are persuaded that *Prince* undermines the purpose of Pennsylvania's Borrowing Statute which we are bound to follow. The statute is unequivocal that an action is barred in Pennsylvania if it is barred by the laws of the state in which it arose. For the purposes of this statute of limitations we are in effect directed to sit as a court in Illinois and apply the law of Illinois.

While we have determined that the Illinois statute of limitations is applicable, we note parenthetically that under Pennsylvania law a cause of action of this kind does not accrue until the injured party knows or should know of his injury. *Med-Mar, Inc. v. Dilworth,* 214 Pa.Super. 402, 257 A.2d 910 (1969), *allocatur denied,* held that where the roof of a building became saturated with water due to a construction error but the defect did not come to the owner's attention until eight and one-half years after completion of the building when the owner noticed a pungent odor caused by rotting materials, the owner's action alleging negligent design was not barred by the Pennsylvania six

year period of limitation, running from the date of performance.

Ironically, *Med-Mar* arrived at this conclusion in part by adopting the reasoning of the Illinois case of *Van Buskirk v. Murden,* 22 Ill. 446 (1859), a case not involving the statute of limitations. *Van Buskirk* reversed a trial court instruction that in the absence of fraud the acceptance of a house without objection was a waiver of all defects in the plastering:

"Everyone can see that this is too broad altogether, and well calculated to do great injustice, and is not the law. Had the court restricted it to visible defects, it would have been well. It is monstrous to say, in reference to plasterer's work, that all defects are waived when such work is accepted without objection and in satisfaction of the contract—all visible defects, or such as could be ascertained by inspection and examination, could be waived, but how can the employer tell by looking at a smooth coat of plastering, everything fair to the eye, whether the lathing has been done properly, or the mortar well made with due proportions of lime, sand and hair, to give it adhesion, hardness and durability. No man can tell, and therefore it is that the party should not be bound by an acceptance, or acceptance considered as a waiver of latent defects, which too often lurk in plastering, which to the eye appears very fine and unexceptionable."

Despite the language of *Van Buskirk,* on the question of when the statute of limitations begins to run, Illinois law sets that time as that of delivery or of completion of construction. A complete exposition of the law of Illinois as to when the statute of limitations runs in actions alleging negligence is found in *Gates Rubber Co. v. USM Corp.,* 508 F.2d 603 (7th Cir. 1975). There, Circuit Judge Stevens, now Mr. Justice Stevens, held that in an action alleging negligence in the design, manufacture and installation of a lead extrusion press the cause of action accrued at the time of delivery of the press, not when it failed to operate properly.

The district court in *Gates* had entered summary judgment for defendants. In affirming, the Seventh Circuit acknowledged that in three recent cases the Illinois Supreme Court had applied the "discovery" rule. Judge Stevens distinguished those cases and applied the "date of injury" rule found in six other Illinois appellate court decisions. The three cases applying the discovery rule were distinguished on the grounds that in each of them the Illinois Supreme Court attached importance to special facts not present in *Gates:*

"Two of the cases involved personal injuries; in all three there was a disparity between the parties which made the plaintiff especially vulnerable to the harm caused by the defendant.

In *Lipsey* [*v. Michael Reese Hospital,* 46 Ill.2d 32, 362 N.E.2d 450 (1970)], the plaintiff was a patient who suffered harm at the hands of his surgeon. Not surprisingly, the case has been followed in a case involving malpractice by an attorney. But clearly the relationship between the manufacturer and the purchaser of a 2500 ton lead extrusion press differs from the attorney-client or the physician-patient relationship. In *Williams* [*v. Brown Mfg. Co.,* 45 Ill.2d 418, 261 N.E.2d 305 (1970)] the plaintiff was a consumer and thus a member of the class for whom the *Suvada* [*v. White Motor Company,* 32 Ill.2d 612, 210 N.E.2d 182 (1965)] doctrine was intended to afford special protection from harm caused by manufacturers of defective and dangerous products. Since the underlying rationale of *Williams* rests, in part, on the premise that the decision of personal injury cases should not be controlled by rules developed to serve the needs of commercial transactions, it would be anomalous to construe *Williams* as having fashioned a new rule for commercial transactions.

*Rozny* [*v. Marmul,* 43 Ill.2d 54, 250 N.E.2d 656 (1969)] is the case which most strongly favors the plaintiff here: however, the Illinois appellate courts on two occasions have expressly rejected that case as au-

thority for applying the discovery rule in a case such as this. We think their refusal to extend *Rozny* was correct not merely because the *Rozny* decision placed heavy reliance on a subsequently-enacted statute pertaining to surveyors, but also because the emphasis in the *Rozny* opinion on avoiding the creation of 'potential liability in an indeterminate amount for an indeterminate time to an indeterminate class' suggests that the Court would hesitate to extend the discovery rule to this type of case. If litigation arising out of this commercial transaction is subject to that rule, we do not perceive a principled basis for limiting its application, since we are not persuaded that the Illinois Supreme Court would draw a distinction between negligent and nonnegligent manufacturing defects, or a distinction between all tort claims and all contract claims." (footnotes omitted) 508 F.2d 614–615.

█ It, therefore, appears that as to the claims based on negligence and strict liability in torts under 402A, the Illinois five year statute of limitations applies and begins to run from the date of delivery or acceptance and not the date of discovery. As plaintiff's complaint against Brown & Kerr and against Hennepin was not filed until March 9, 1973, or more than five years from August, 1967, those claims sounding in tort will be dismissed.

█ As to J&L's claims against J–M based upon negligence and the Restatement of Torts 2d, the question is a close one. The roofing bond issued by J–M recites that the roof was completed on August 30, 1967, and it appears that J–M representatives inspected the completed roof in September of 1967 at which time J–M advised J&L that the work proceeded in a satisfactory manner in accordance with specifications. Measuring the five year statute of limitations from either of those dates would make the complaint filed on August 7, 1972 timely. On

the other hand, J–M contends that all J–M products incorporated into the roof were delivered prior to August 7, 1967 pursuant to Brown & Kerr purchase orders issued September 12, 1966, and that this action was therefore filed more than five years from the delivery of any J–M products.

J–M relies on *Gates Rubber,* supra, for the proposition that the actionable injury occurs when the defective product is delivered:

"We believe the correct conclusion [in *Klondike Helicopters, Ltd. v. Fairchild Hiller Corp.,* 334 F.Supp. 890 (N.D.Ill. 1971)] under Illinois law should have been that the plaintiff was injured, for purposes of this property damage action, when he took possession of the defectively manufactured helicopter [and not when it crashed]." 508 F.2d at 607.

*Gates Rubber* did not purport to analyze the problem presented here, and its holding that the action was barred by the statute of limitations would apply equally whether the critical date was thought to be the date of delivery of the press or the date of its completed installation and acceptance.[1] *Gates Rubber* also stated that plaintiff suffers no harm until he *accepts* delivery of the defective item [508 F.2d at 607]. In this case acceptance occurred not before August 30, 1967, and the Court is of the opinion that that is the critical date.

█ We believe summary judgment on this issue is inappropriate for the further reason that the claim of negligence goes not only to supplying a defective product but also to recommending the design and specifications of the roof. The time of delivery of the components of the roof would appear to be an inappropriate measure of when such an action would accrue. The Court believes that the determination of these matters should best be made at the conclusion of the trial on the merits.

1. The lead extrusion press involved in *Gates Rubber* was installed in "early 1964". The failure of the press occurred in July of 1968, and the lawsuit was filed in March of 1971. This was seven years after installation of the press, and "delivery" of the press could not, of course, have occurred later than the date of installation.

## II. *Breach of warranties.*

J&L's claim against J–M is based in part on a breach of warranty theory. The parties make no contention that an action for failure to use due care in the performance of a contract cannot arise independently of a breach of contract action.[2] Nor is there any contention that the terms of any written agreement preclude the recovery of damages for negligent performance of the contract.

We further note that both J–M and J&L have extensively briefed § 2–725 of the Uniform Commercial Code, and neither asserts that that provision is inapplicable to this lawsuit. On the other hand, Hennepin, although in a somewhat different context,[3] contends that the U.C.C. does not apply to this transaction because the present dispute is over a construction contract, and not a transaction in "goods". *City of Kingsport v. SCM Corp.*, 352 F.Supp. 288 (E.D.Tenn. 1972); *DeMatteo v. White*, 233 Pa.Super. 339, 336 A.2d 355 (1975).

Defendant J–M no doubt prefers the U.C.C. provision because it contains a basic limitation period of four years from the time of accrual of the cause of action rather than the five year period of limitations generally applicable to property damage claims under Illinois law. Plaintiff J&L, on the other hand, relies on the future warranty exception contained in § 2–725(2):

> "A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of

action accrues when the breach is or should have been discovered."

The Court concludes that the U.C.C. does not apply to this dispute, as it is a dispute over a construction contract. We further determine that if the U.C.C. does control this dispute, its four year statute of limitations would bar plaintiff's claim, as the language contained in J–M's literature concerning built-up roofs does not amount to a warranty explicitly extending to future performance.

### A. *Construction contract v. transaction in goods.*

■ The Court agrees with the logic of *DeMarco,* supra and the cases cited therein, and with the holding of *City of Kingsport,* supra, that contracts for the construction of a roof are not sales of goods within the scope of the U.C.C. *DeMatteo,* a multi-party dispute, carefully distinguished the relationships between the various parties. As between the contractor and the purchaser, where the relationship was governed by a construction contract, there being no agreement that called "for a sale of 'raw materials' (bricks, roofing tile, plaster, etc.) as such," the court held that the U.C.C. did not apply. As between the purchasers and a supplier of bricks, however, where the only relationship was that of buyer and seller, the U.C.C. did apply.

In the present case, the relationship of J–M and J&L was not limited to merely supplying component parts of the roof. J&L appears to have sought the expertise of J–M to assure a proper roofing system, and a J–M representative was responsible to review the basic roof design and recommend changes. During the construction, which was performed by Brown & Kerr (a J–M approved contractor), J–M representa-

---

**2.** Until recently under Pennsylvania law, claims for breach of warranty are distinct from claims for negligence, and at least as to personal injuries, are subject to separate statutes of limitations. *Gardiner v. Philadelphia Gas Works,* 413 Pa. 415, 197 A.2d 612 (1964). In *Gates Rubber,* supra, decided under Illinois law, the Court simply assumed that that action for negligence could arise independently of any breach of contract. 508 F.2d at 606, 613–614.

**3.** Hennepin argues that the U.C.C. does not apply because Hennepin engaged in a construction contract, and that since the Code doesn't apply, the implied warranty of fitness for a particular purpose, found in § 2–315, is inapplicable. This argument is discussed later in this opinion.

tives were to visit the job site once or twice per week and inspect the work. Deposition testimony cited by J&L states that it was J–M's prime responsibility to produce a satisfactory roof. While the precise role played by J–M in this project is not now apparent, it does appear that the relationship was substantially more than that of buyer and seller under the U.C.C.

### B. *Future Performance Exception.*

J&L concedes that "delivery" of the roof occurred more than four years prior to its filing of suit. J&L relies, however, on the "future performance" exception in § 2–725(2), which provides for accrual of the cause of action when the breach is or should have been discovered.[4]

The parties have cited considerable authority as to what language is necessary to create an "explicit" warranty extending to future performance. For example, *Mittach v. Seal Lock Burial Vault, Inc.*, 42 A.D.2d 573, 344 N.Y.S.2d 101 (1973), held that a warranty that a vault would give satisfactory performance "at all times" explicitly extended to future performance. On the other hand, a warranty that an electric generator would "continue to be capable of continuous operation at full rated capacity for a full normal machine life span of at least thirty years" was held to be not a warranty that the machine would be operating in thirty years, but only a warranty of present characteristics, design and condition. *Citizens Utilities Co. v. American Locomotive Co.*, 11 N.Y.2d 409, 230 N.Y.S.2d 194, 184 N.E.2d 171 (1962).

Perhaps the most thorough analysis of the future performance exception of § 2–725(2) is found in the district court opinion in *Binkley Co. v. Teledyne Mid-America Corp.*, 333 F.Supp. 1183 (E.D.Mo.1971) *affirmed* 460 F.2d 276 (8th Cir. 1972). The district court in *Binkley* cited two defini-

tions of "explicit". One came from *Hvidsten v. Northern Pac. Ry. Co.*, 76 N.D. 111, 33 N.W.2d 615 (1948) which in interpreting another statute adopted the definition given in Webster's International Dictionary 2d ed.:

> "Explicit is defined * * * as 'Not implied merely, or conveyed by implication; distinctly stated; plain in language; clear; not ambiguous; express; unequivocal.'"

The second definition came from *Harney v. Spellman*, 113 Ill.App.2d 463, 251 N.E.2d 265 (1969), which construed "explicit" when it appeared in another section of the U.C.C. 2–401(2):

> "The term 'explicit' means that which is so clearly stated or distinctly set forth that there is no doubt as to its meaning."

See also, *Matlack, Inc. v. Butler Mfg. Co.*, 253 F.Supp. 972 (E.D.Pa.1966).

█ To show an explicit warranty of future performance, J&L relies on J–M literature concerning Fesco board and built-up roofs, on J–M's awareness of J&L's concern that a proper roof be made, and on J–M's responsibility to review the roof design, make recommendations and render technical assistance.

J–M literature concerning built-up roofs provides:

> "Johns-Manville has been producing roofing felts made of asbestos for over 100 years. On the record, Johns-Manville can cite many asbestos roofs that, today, are still performing satisfactorily after more than forty (40) years of exposure to heat, cold, water, air and even fire. And, all of this service with minimum maintenance and repair costs." (Appendix Exhibit 3, marked Katkic Deposition Exhibit 1).

J–M literature concerning Fesco Board provides:

---

4. The date at which J&L should have discovered the defect is not susceptible to determination by summary judgment. J&L asserts that the earliest time it should have discovered the defect was December of 1968, a date within the four year statute. That was the date of the first "blow-off". A blistering condition first occurred in November of 1967, but J–M allegedly assured J&L that that was not an unusual condition and that the "entire roof was laying beautifully". Cracking of the roof membrane and other blow-offs occurred subsequent to December of 1968.

"Improved Fesco Board resists the tensions, twists and pulls created by high winds, tornadoes, hurricanes and building movements. Laboratory tests, pictured here, demonstrate Improved Fesco Board's great tensile strength and outstanding resistance to diagonal shear and horizontal shear . . . Many roof insulations barely meet the Factual Mutual minimum requirements but Improved Fesco Board withstands 120 miles per hour winds with a 100% factor of safety." (Appendix Exhibit 4 marked Katkic Deposition Exhibit 4, p. 4.)

These representations as to the conditions of other J–M roofs and their performance records do not amount to an explicit warranty of future performance. Nor does the fact that J–M knew of J&L's expectations of a durable and adequate roof (which would be the expectations of anybody acquiring a roof on a new plant) or the possible fact that J&L relied on J–M's expertise raise these representations of present characteristics to explicit warranties of future performance.

We reach these conclusions under the U.C.C. regardless of whether Pennsylvania or Illinois law applies, as both states have adopted § 2–725 in identical form. 12A Purdon's Stat. § 2–725; Ill.Rev.Stat. ch. 26, § 2–725. We know of no reason why Illinois and Pennsylvania would differ in their application of this provision, and the policy of the act to make uniform the laws among various jurisdictions would be hindered by doing so. § 1–102.

Since the U.C.C. does not apply, and since its four year statute would not have been tolled even if it did apply, J&L is relegated to its common law remedies for breach of contract. As acceptance of the roof occurred about August 30, 1967, this suit against J–M appears to be timely in accordance with our analysis in Part I of this opinion, as the shortest statute that might apply is the Illinois five year provision of ch. 83, § 16.

### III.   *Tortious Misrepresentations.*

Defendant J–M admits that the Illinois statute of limitations for actions in tortious misrepresentations is five years. Ill.Rev. Stat., ch. 83, § 16. The parties disagree, however, on when the statute begins to run. Plaintiff contends that the statute runs only from the time of discovery or from when, with reasonable diligence, discovery ought to have been made. *Rozny v. Marnul,* supra [Illinois]; *Deemer v. Weaver,* 324 Pa. 85, 187 A. 215 (1936). Defendant contends that the cause of action accrues at the time of consummation of the transaction made in reliance upon the misrepresentation. *Nelson v. Peterson,* 131 Ill.App. 443 (1907), *affirmed* 229 Ill. 240, 82 N.E. 229 (1907); *Smith v. Blachley,* 198 Pa. 173, 47 A. 985 (1901).

For the reasons stated previously, we determine that Illinois law is applicable to this dispute.

The facts surrounding this undertaking will have to be developed in full in connection with the claims for negligence and breach of warranty. Little trial time would be saved by determining this issue now. In view of the contradictory authority cited as to the appropriate time of accrual of the cause of action, we prefer to postpone a definitive ruling on this matter until after the trial on the merits. We need not determine at this time whether, in the absence of a "discovery" rule, the cause of action accrued at the time of entering a contract or upon completion and acceptance of the roof.

While J&L's causes of action sounding in negligence against Brown & Kerr and Hennepin are barred by the Illinois five year statute of limitations for injuries or damage to property, the causes of action based on breach of warranty stand on a different footing. The Illinois statute of limitations for breach of a *written* contract is ten years, Ill.Rev.Stat. ch. 83, § 17,[5] and the

---

**5.** Section 17 provides:

"Except as provided in Section 2–725 of the "Uniform Commercial Code", enacted by the Seventy-second General Assembly, ac-

tions on bond, promissory notes, bills of exchange, written leases, written contracts, or other evidences of indebtedness in writing, shall be commenced within 10 years next

Pennsylvania statute of limitations is six years. 12 Purdon's Stat. § 31.

J&L had a written contract with Hennepin. We have not been shown any written agreement between J&L and Brown & Kerr that covers all the terms of their agreement. However, J&L has produced a letter dated December 4, 1967 from Brown & Kerr to Hennepin, that states in part:

"However, we wish to re-affirm that we stand ready to correct defective workmanship or materials that may show up within the first two years after completion, at which time an inspection by Johns-Manville Sales Corporation and ourselves will assure that the roof is in good condition before the responsibility is taken over fully by the bonding company."

This letter does not by itself show any agreement between J&L and Brown & Kerr. However, it is possible that principles of privity of contract or that explicit language in the prime contract or subcontract agreements made Brown & Kerr bound directly to J&L. Ordinarily, the Court would not speculate as to such matters, and plaintiff's failure to direct us to the particular contractual provisions that support its claim of written contract would be fatal to its position. However, since our rulings as to other matters make a trial necessary, we will deny summary judgment and defer determination of this matter until time of trial.

IV. *Warranties of Fitness for Intended Purpose.*

■ Hennepin in its summary judgment motions against plaintiff J&L and defendant J–M argues that there can be no implied warranty of fitness for intended purpose because it is based on U.C.C. § 2–315 and the U.C.C. does not apply because this is a construction contract and not a contract for the sale of goods. We find this argu-

ment inconclusive. While we agree with the cases cited by Hennepin, *City of Kingsport v. SCM,* supra, and *DeMatteo v. White,* supra, that construction contracts are not governed by the U.C.C., the implied warranty of fitness for purpose is not an invention of the U.C.C. or its predecessor the Uniform Sales Act. Rather, it is an outgrowth of the common sense and common law recognition that such a warranty may be implied under certain circumstances. Whether or not the U.C.C. applies is not decisive.

■ Hennepin further argues that the lack of any contractual relationship between Hennepin and J–M negates the existence of any implied warranties between them. We find, however, the existence of a material issue of fact as to the relationship between the parties. The facts *may* show for example, that Hennepin was contractually required to obtain the J–M roofing bond for J&L, that J–M was bound by the prime contract including its obligations to arbitrate, that Hennepin was legally responsible for materials and workmanship of the roof, and that Hennepin's obligations were backed in whole or in part by the roofing bond issued by J–M. These matters will best be resolved at trial.

V. *Limitation of liability, roofing bond.*

■ J–M has moved for partial summary judgment limiting liability to $253,120, which is the amount of a roofing bond issued by J–M and guaranteed by a surety. While the bond states that it is given "in lieu of all other liability or warranties", J&L argues that the bond was issued upon completion of the roof and is intended as a supplemental warranty and not as the exclusive warranty.

There appears to be a material issue of fact as to the intent of the parties re the roofing bond and the circumstances of its

---

after the cause of action accrued; but if any payment or new promise to pay shall have been made, in writing, on any bond, note, bill, lease, contract, or other written evidence of indebtedness, within or after the period of 10 years, then an action may be commenced thereon at any time within 10 years after the time of such payment or promise to pay." The parties have shown us no authority indicating that this statute would not apply to a dispute of this kind.

issuance which can be resolved only on the basis of parol evidence. Further, even if we determined that the bond limited liability as J–M contends, it would probably be the better practice nevertheless to submit the entire question of damages to the jury so that the record is complete for appeal. We will therefore determine this issue post-trial, upon consideration of all the appropriate evidence.

## VI. *Indemnity and Contribution.*

█ Pennsylvania's choice of law rules must be used to determine which substantive rules of law apply. *Klaxon Co. v. Stentor Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The proper function of the federal court is to ascertain what the state law is, not what it ought to be. *Klaxon,* supra, at p. 497, 61 S.Ct. 1020.

█ As we discussed in connection with the statute of limitations problem, Pennsylvania has adopted the "grouping of contacts" or "most significant relationship" principle as its choice-of-law rule. *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964). The "most significant relationship" approach is also applied on questions of contribution. See *Elston v. Industrial Lift Truck Co.*, 420 Pa. 97, 216 A.2d 318 (1966) (effect of workmen's compensation acts on contribution by joint tortfeasor).

█ Initially, we hold that these claims for contribution and indemnity are timely filed. No doubt because Illinois allows indemnity and contribution only in limited circumstances, the Illinois courts have given less attention to the question of when such a cause of action accrues than have courts of other jurisdictions. Nevertheless, it is the well established rule that a cause of action for indemnity arises only upon payment of a claim or at the very earliest upon settlement or entry of judgment on the claim. The view propounded by some of the defendants would permit a suit to be barred before it comes into existence. See *Chicago, Rock Island & Pacific Ry. Co. v. United States,* 220 F.2d 939 (7th Cir. 1955); and *Mack Trucks,* supra.

Hennepin, Brown & Kerr, and J–M all agree that the law of Illinois should be applied. J&L has argued that Pennsylvania law applies, but its argument has been in connection with the statute of limitations and it would appear to have no interest in the contribution and indemnity claims. Swindell-Dressler (Pullman), however, vigorously denies that Illinois law applies.

Pullman contends that its sole connection with this case is through Swindell-Dressler, a division of Pullman which "has its principal place of business in Pittsburgh, Pennsylvania". Pullman contends that all acts by Pullman were performed in Pittsburgh, and that Pullman had no obligation or responsibility pertaining to the construction of the facility in Illinois. Pullman further points out that approval of the built-up roofing specifications by Brown & Kerr took place at a meeting in Pittsburgh.

█ Assuming that all these contentions are true, the Court holds as a matter of law that Illinois law nevertheless applies. Even though Pullman's actions occurred in Pennsylvania, the harm occurred in Illinois. Likewise, the actions of the other parties which might entitle Pullman to contribution or indemnity occurred for the most part in Illinois, including the entire construction of the steel mill and its roof. Pennsylvania has little interest in having its law applied to this controversy, as the parties concerned with the indemnity issue are not incorporated, nor do they have their principal place of business in Pennsylvania, Pullman's contention that its Swindell-Dressler division has its principal place of business in Pittsburgh notwithstanding.

█ Under Illinois law, the right to contribution or indemnity is the exception, not the rule. A right to indemnity founded upon express contract is valid and enforceable. *Newberg Construction Co. v. Fischback, Moore & Morrissey, Inc.,* 46 Ill.App.2d 238, 196 N.E.2d 513 (1965); *John Griffiths & Sons Co. v. National Fireproofing Co.,* 310 Ill. 331, 141 N.E. 739 (1924). Further, while we know of no Illinois cases on point, a written contract of indemnity will govern

the parties' relationship and make common law indemnity inapplicable. *Cf. Seaboldt v. P. R. R.,* 290 F.2d 296 (3d Cir. 1961); *Eazor Express, Inc. v. Barkley,* 441 Pa. 429, 272 A.2d 893 (1971). Brown & Kerr's motion for summary judgment against Hennepin will therefore be denied, as the sub-contract purchase order between these two parties contains an indemnity provision. Exhibit 24, Hendrickson Deposition.[6]

A right to indemnity can also be found under Illinois law where a person secondarily liable has been compelled to pay damages for a person primarily liable, under an implied contract of indemnity.

It is well established under Illinois law that there can be neither contribution nor indemnity among joint tortfeasors. *Carver v. Grossman,* 55 Ill.2d 507, 305 N.E.2d 161 (1973); *Lopez v. Brackett Stripping Machine Co. Inc.,* 303 F.Supp. 669 (N.D.Ill.1969). Nevertheless, a joint tortfeasor who is only passively and secondarily negligent may recover indemnity from another tortfeasor who is actively and primarily negligent. *Gulf, Mobile & Ohio R. Co. v. Arthur Dixon Transfer Co.,* 343 Ill.App.2d 148, 98 N.E.2d 783 (1951) (railroad, liable to employee under F.E.L.A., could recover against transfer company that parked its vehicle too close to tracks).

Illinois also recognizes a concept of "equitable apportionment" whereby one tortfeasor aggravates the damages for which another tortfeasor is liable. In *Gertz v. Campbell,* 55 Ill.2d 84, 302 N.E.2d 40 (1973), a driver who negligently broke plaintiff's leg in an automobile accident was permitted to join as third party defendant an attending physician who compounded the injury. The Court held that the prohibition against contribution between joint tortfeasors did not apply, as the two parties did not act in concert and acted at different times, with neither party having control over the actions of the other.

The factual situations in *Gertz,* supra, and *Gulf, Mobile & Ohio R. Co.,* supra, are not entirely analogous to the case at bar, but we know of no reason their principles should not be applied. We are unable to say that the facts in this case cannot be such as to allow indemnity or "equitable apportionment". While there are no allegations of technical, statutory liability as in *Gulf, Mobile & Ohio,* the characterization of negligence as "active" or merely "passive" is normally a question of fact for the jury. *Wrobel v. Tranpani,* 129 Ill.App.2d 306, 264 N.E.2d 240 (1970). We cannot as was possible in *Lopez,* supra [7] rule in advance of trial, that any negligence on the part of, say, Pullman, could be characterized only as active and not passive. Nor can we deter-

6. "Sub-contractor agrees to indemnify Hennepin Constructors and save it harmless against any cost, loss or expense and from any claim of liability which may be asserted against Hennepin Constructors for . . . damage to property, resulting from any act, conduct, omission or in any way arising out of the performance of work under this contract, either negligent or otherwise, by the Sub-contractor, its employees, agents or representatives, or from the use of any machinery or equipment owned or operated by Hennepin Constructors and used by Sub-contractor, its employees, agents or representatives in the performance of this contract."

While Hennepin relies on this provision to defeat Brown & Kerr's motion for summary judgment, Hennepin does not contend in its brief that Brown & Kerr is necessarily liable to it in the event Hennepin is found liable. Such a contention would appear to be unsound. For example, the provision does not purport to make Brown & Kerr liable generally for Hennepin's own negligence, and in most jurisdictions

it is the law that an indemnitee cannot recover for its own negligence in the absence of an express contractual provision so stating in unmistakable terms. See *United States v. Seckinger,* 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970). We do not now determine the scope and application of this provision, but hold only that it is sufficient to defeat Brown & Kerr's summary judgment motion against Hennepin.

7. In *Lopez,* the claim against the manufacturer of a machine that severed four of plaintiff's fingers could have succeeded only upon a finding that the machine left the manufacturer in a defective condition. The Court held that such a finding could not be characterized as "passive" negligence, and that the manufacturer's third party complaint, which alleged negligence of the same character by plaintiff's employer, would be dismissed since only if manufacturer's negligence was passive could it recover indemnity under Illinois law.

mine as a matter of law in advance of trial that any damages that may have been caused by a negligent design by Pullman were not aggravated later by negligent construction techniques or materials within the "equitable apportionment" concept of *Gertz*. Summary judgment on the contribution and indemnity claims will therefore be denied.